UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROXANA BERENICE CASTRO AJMAD,      :
                                   :
                Plaintiff,         :
                                   :
     -v-                           :
                                   :
DWIGHT CRESCIONI, *et al.*,        :
                                   :
                Defendants.        :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/22/204

**MEMORANDUM ORDER**

23-CV-5776 (MMG) (JLC)

**JAMES L. COTT, United States Magistrate Judge:**

On June 17, 2024, plaintiff Roxana Berenice Castro Ajmad requested that the Court "recognize [] service [on defendant Dwight Crescioni] via social media as sufficient under the circumstances." June 17, 2024, Letter from Kareem El Nemr to the Court ("June 17 Letter") at 1, Dkt. No. 26. In the alternative, Ajmad seeks an order permitting service via email. *Id.* Following the Court's order directing Ajmad to submit a letter "providing authority in support of her service on defendant Dwight Crescioni via Instagram and LinkedIn," as well as "authority in support of service by email," Dkt. No. 27, Ajmad submitted a letter brief dated June 27, 2024. June 27, 2024 Letter Brief ("Letter Brief"), Dkt. No. 28. For the following reasons, the Court denies Ajmad's application to serve Dwight Crescioni via social media or email without prejudice to renewal.

Ajmad has also moved to join Tyrone Crescioni as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure. June 17 letter at 1. As discussed below, this motion is granted.

1

## I.   BACKGROUND

### A.  Factual Background

Ajmad filed her complaint on July 6, 2023, more than one year ago, against four defendants: Dwight Crescioni, Wellsure Corporation, Ranjit Hewavitarne, and FCB Commodities LLC.  Dkt. No. 1.  Since then, Ajmad has been unable to effect service on any defendant, except FCB Commodities LLC.  On December 21, 2023, Ajmad filed a letter seeking an extension of time to serve defendants via alternative means including publication in newspapers and service through social media.  Dkt. No. 15.  In an order dated January 8, 2024, the Court outlined the efforts that Ajmad had made to effect service to date, Dkt. No. 19 at 3–4, which this memorandum order incorporates by reference.  In this same January 8 order, the Court addressed Ajmad's requests to serve defendants by publication and via social media.  *Id.* at 4–6.  The Court held that "Ajmad's request for an extension of time to serve defendants either by newspaper publication or via Instagram and LinkedIn is thus granted, although the Court makes no conclusions at this stage as to whether her proposed service would comport with due process."  *Id.* at 6.  The Court emphasized that "plaintiff has not proffered any evidence indicating that Dwight or Tyrone Crescioni in fact uses the two identified social media accounts" and "[t]he record needs to be more fully developed before the Court can determine whether service by alternative means was adequate."  *Id.*

Since then, Ajmad's service woes have continued.  On April 9, 2024, Ajmad sought another extension of time to effectuate service because she "encountered

substantial difficulty in locating a process server capable of executing this specialized form of service." Dkt. No. 21. The Court granted this request, extending the deadline to May 8, 2024. Dkt. No. 22. On May 9, 2024, Ajmad requested another extension of time to execute service "due to a clerical error." Dkt. No. 23. The Court granted this request *nunc pro tunc*, providing Ajmad until June 17, 2024 to effect service on defendants, and noted that absent good cause, there would "be no further extensions." Dkt. No. 24.

On June 17, 2024, nearly six months after Ajmad first proposed effecting service on defendants by publication and social media, Ajmad filed a letter purporting to have served defendant Dwight Crescioni via private messages on Instagram and LinkedIn. June 17 Letter at 1. Ajmad also indicated that she has "been unable to proceed with service by publication due to the prohibitive costs involved." *Id.* Ajmad's letter does not address efforts to serve defendants Wellsure Corporation or Ranjit Hewavitarne. *Id.* However, for the first time, Ajmad submitted an affirmation of service, dated July 27, 2023, demonstrating that defendant FCB Commodities LLC was served through the New York Secretary of State. Dkt. No. 26-2.

Ajmad's June 17 letter also attaches a declaration by David A. Gabay. June 14, 2024 Declaration of David A. Gabay ("Gabay Decl."), Dkt. No. 26-1.[1] This declaration purports to attach screenshots of two messages sent via private message on Instagram to Dwight Crescioni. *Id.* at 3–4. Neither Ajmad's letter nor Gabay's

---

[1] This declaration is in the form of a letter to the Court.

declaration attach a screenshot of any message sent via LinkedIn, and while, in her letter, Ajmad wrote that "[s]creenshots of these messages, including the text and attachments, have been previously provided," the Court has not received other screenshots. June 17 Letter at 1. Ajmad does not offer any additional evidence that these Instagram or LinkedIn accounts are connected to and used by defendant Dwight Crescioni.

Ajmad's letter alternatively seeks "an order permitting service via email." *Id.* Ajmad explains that "Dwight Crescioni has been actively communicating with the plaintiff via email at fcbcommoditiesllc@gmail.com, indicating that this method would likely be effective in providing notice." *Id.*

Following the receipt of Ajmad's June 17 letter, the Court directed Ajmad "to submit a letter by June 28 providing authority in support of [her] service on defendant Dwight Crescioni via Instagram and LinkedIn[.]" Dkt. No. 27. In response, on June 27, 2024, Ajmad submitted a letter brief which does not provide additional evidence to connect Dwight Crescioni to the social media accounts or offer any screenshots of messages allegedly sent to his LinkedIn account, but does elaborate on her request for service via email. Ajmad explained that the fcbcommoditiesllc@gmail.com address "was used [by Dwight Crescioni] to send a contract for the Plaintiff to sign and to facilitate the transfer of funds between the parties[.]" *Id.* at 6. Ajmad did not provide screenshots of any emails to or from this address, nor did she offer evidence that Dwight Crescioni has used this email address recently.

4

Following its June 17 letter, the Court also directed Ajmad to file a motion and supporting memorandum of law to add Tyrone Crescioni as a necessary party to this action.  Dkt. No. 27.  On July 17, 2024, Ajmad submitted a motion to add Tyrone Crescioni, Dkt. No. 31, as well as a memorandum of law, ("Memo of Law"), Dkt. No. 32, a declaration in support of the motion, Dkt. No. 33, and a third amended complaint adding Tyrone Crescioni as a defendant.  Dkt. No. 34.

## II.    DISCUSSION

### A.  Legal Standards

#### 1.  Service via Social Media or Email

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides: "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"  Fed. R. Civ. P. 4(e)(1).  "In New York State, subsections (1), (2), and (4) of the N.Y. C.P.L.R. § 308 provide for service by 'personal delivery, delivery and mailing, and nailing and mailing, respectively.'"  *Doe v. Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020) (citing *Tishman v. The Associated Press*, No. 05-CV-4278 (GEL), 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006)).  "Where service pursuant to these subsections is impracticable, however, service may be effected in such a manner as the court, upon motion without notice, directs."  *Id.* (citation and internal quotations omitted).  "A particular means of service is not sufficient unless it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections.'" *Id.* (quoting

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Service through a social media platform is typically only available as a

"backstop" for service by other means. *Id.* One of the difficulties is that "anyone

can make a [social media] profile using real, fake, or incomplete information, and

thus, there is no way for the Court to confirm whether the [social media account] . . .

is in fact the . . . [d]efendant to be served." *Id.* (quoting *Fortunato v. Chase Bank*

*USA, N.A.*, No. 11-CV-6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7,

2012)). In *Doe*, when a plaintiff "ha[d] not offered evidence that the Defendant

regularly uses and maintains the [social media] account at issue . . . nor . . . offered

evidence sufficient to demonstrate that the [social media] user is in fact the

Defendant," the court denied the application for service via social media. *Id.* at 16;

*see also Fortunato*, 2012 WL 2086950, at *2 (denying motion for service via

Facebook when party "ha[d] not set forth any facts that would give the Court a

degree of certainty that the Facebook profile its investigator located is in fact

maintained by [the intended recipient] or that the email address listed on the

Facebook profile is operational and accessed by [the intended recipient]").

More courts have found that service by email satisfies due process. *See e.g.*,

*Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380 (PGG) (OTW), 2019 WL 6498305, at *3

(S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to

meet the requirements of due process.") (citation omitted); *Fed. Trade Comm'n v.*

*Pecon Software*, Nos. 12-CV-7186, 12-CV-7188, 12-CV-8191, 12-CV-7192, 12-CV-

7195 (PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant."). "However, 'in those cases where service by email has been judicially approved, the movant supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" *Kesten v. Broadcast Music, Inc.*, No. 20-CV-8909 (LJL), 2021 WL 1740806, at *2 (S.D.N.Y. Mar. 3, 2021) (quoting *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913 (KMK), 2015 WL 3457452, at *8 (S.D.N.Y. June 1, 2015)).

"[C]ourts have upheld service via e-mail [in] . . . cases [that] involved email addresses undisputedly connected to the defendants and that the defendants used for business purposes." *AMTO, LLC*, 2015 WL 3457452, at *8 (citation omitted). When an email address was "used in relation to the scheme by [] defendants . . . the [plaintiff] ha[d] demonstrated a high likelihood that defendants would receive service at [that email address]." *F.T.C.*, 2013 WL 4016272, at *7. To establish that an email address is still in use, some courts have considered screenshots, submitted by a plaintiff, indicating that a defendant's Gmail account was used recently because the online status associated with the Gmail address appeared as a green circle. *AMTO, LLC*, 2015 WL 3457452, at *3 ("The webmail Gmail client user interface displays a contact list of all Gmail chat users on the left hand side of the webmail user interface . . . next to each chat user there is an indicator showing whether the Gmail chat user is online[.]").

7

## 2. Adding a Necessary Party

A party is "necessary" under Federal Rule of Civil Procedure 19 if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). As the Rule provides, a party should only be added as a necessary party if "complete relief [could not] be accorded among those already parties[.]" *Ruzhinskaya v. HealthPort Technologies, LLC*, 942 F.3d 69, 72 (2d Cir. 2019) (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006)).

"[C]ourts require 'more than an unsupported assertion that [the non-joined party] has a claim to that interest.'" *Easy Financial, LLC v. Churchill MRA Funding I, LLC*, No. 23-CV-2948 (GHW) (SLC), 2023 WL 8478552, at *3 (S.D.N.Y. Dec, 7, 2023) (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 (2d Cir. 2002)). "Rather, the moving party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Id.* (citation and internal quotations omitted). "In addition to this concern for the interests for the absent party, the Supreme Court has observed that 'the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.'" *Karasyk v. Marc Commodities Corp.*, 770 F. Supp. 824, 831 (S.D.N.Y. 1991) (quoting

8

*Provident Tradesmens Bank & Tr. Co. v. Patterson,* 390 U.S. 102, 110 (1968)).

### B. Analysis

### 1. Motion for Service via Social Media or Email

The Court denies Ajmad's application for service via LinkedIn, Instagram, or email for the following reasons:

### a) LinkedIn

Ajmad has submitted no evidence that a message has been delivered to Dwight Crescioni's LinkedIn account, as she did not include a screenshot of any LinkedIn message with either her June 17 letter or June 27 letter brief. Additionally, the Gabay declaration only mentions messages sent via Instagram and makes no reference to any messages sent via LinkedIn. Furthermore, Ajmad has submitted no evidence that a LinkedIn account with the name Dwight Crescioni in fact belongs to Dwight Crescioni and is used by him.

On this record, there is no basis to approve Ajmad's application for service via LinkedIn. Ajmad may renew her motion if she provides evidence that a message was sent through LinkedIn and that the LinkedIn account to which the message was sent is used by Dwight Crescioni.

### b) Instagram

Ajmad has similarly not submitted evidence to demonstrate that the account that received any Instagram messages belongs to Dwight Crescioni and is used by him. She may renew her application with more evidence to establish the bona fides of the account and its use. However, the Court is troubled by the two screenshots

9

that Ajmad submitted purporting to demonstrate that the summons and complaint were sent to Dwight Crescioni through Instagram. The Court will discuss each screenshot in turn.

The first screenshot appears to show a message sent at 3:25 p.m., which, when read in conjunction with the Gabay declaration, occurred on June 14, 2024. Gabay Decl. at 3. There are two different relevant components of the image. First, there is a bubble at the bottom with the word "Send" in the bottom right corner. Second, there is a window above the "Send" bubble, which takes up most of the screenshot, and includes the words "Complaint.pdf" and "Summons.pdf" in the bottom right corner.

The "Send" bubble appears to show that Gabay had drafted a message that stated: "Please see attached Summons[.]" This drafted message also contained two images or documents, though the Court does not know what these images include. Regardless, because these images and the text are still in the "Send" bubble, it does not appear that they were ever sent.

The second window of the first screenshot presents issues as well. The "Complaint.pdf" and "Summons.pdf" bubbles have red X's beside them. Instagram's policies indicate that "[t]he first message you send to an account that doesn't follow you . . . [c]an only include text and links." *Send a message to someone on Instagram*, Instagram, https://help.instagram.com/155540431448273. Neither Ajmad nor Gabay established in their submissions that Dwight Crescioni follows Gabay on Instagram. And given that both the first and second screenshots have a message

from Instagram directly above the "Send" bubble stating: "Invite Dwight Crescioni (dwightcrescioni) to chat . . . be respectful when messaging others for the first time," it appears that Dwight Crescioni does not follow Gabay, and therefore it would not have been possible for Gabay to have served documents on Dwight Crescioni through Instagram messages.  Gabay Decl. at 3–4.  The red X's therefore seem to signify that the "Complaint.pdf" and "Summons.pdf" were not successfully delivered to Dwight Crescioni's account.

The second screenshot is defective as well.  Gabay Decl. at 4.  Here, it appears that Gabay successfully sent the text "Please see attached Summons" at 3:29 p.m.  However, 14 images—none of which the Court can see—appear as pending and are in the "Send" bubble, but have not yet been sent.

### c)  Email

Ajmad contends that because the email address fcbcommoditiesllc@gmail.com was used by Dwight Crescioni "to communicate directly with the Plaintiff" in furtherance of his alleged scheme, "service via this email is reasonably calculated to apprise Mr. Dwight Crescioni of the pending action and afford him an opportunity to respond, thereby satisfying due process requirements."  Letter Brief at 6.

If this email address was in fact used by Dwight Crescioni in relation to the scheme alleged in the complaint, then service via this email address may well satisfy due process.  However, on the present record, Ajmad has not met her burden.  To do so, Ajmad should submit one or more emails demonstrating that Dwight Crescioni sent and received emails from the address

fcbcommoditiesllc@gmail.com.  Additionally, Ajmad should submit evidence to establish that Dwight Crescioni continues to access this email address.  A recent email sent by Dwight Crescioni from this email address or a screenshot from Gmail indicating that the account is online (with a green circle) would likely suffice.

Thus, Ajmad's application for service via email is denied without prejudice to renewal if she submits additional evidence to establish that an "email is likely to reach the defendant."  *F.T.C.*, 2013 WL 4016272, at \*5 (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011)).

## 2.  Motion to Add a Necessary Party

Ajmad argues that Tyrone Crescioni's joinder is necessary "because he is the CEO of FCB COMMODITIES LLC, the company directly involved in the contract . . . at issue," and has a "legally cognizable interest in the outcome of the litigation" because he "oversees the operations and financial transactions of the company[.]"  Memo of Law ¶¶ 11–12.  Additionally, Ajmad argues that "Dwight Crescioni . . . may not have the same knowledge, authority, or ability to defend the interests of FCB COMMODITIES LLC," that "[w]ithout Tyrone Crescioni's involvement in this lawsuit, the court cannot fully address the claims or provide a complete resolution to the dispute," and that "Tyrone Crescioni's absence may leave the existing parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations[.]"  *Id.* ¶¶ 13–15.

The Court agrees that Tyrone Crescioni, as the CEO of FCB Commodities LLC, would likely have a central role in this dispute.  In particular, disposing of this

12

action in Tyrone Crescioni's absence may impair his ability to protect his interests, or leave existing parties, such as Dwight Crescioni, "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Furthermore, Ajmad's complaint "explicitly request[s] relief directly implicating [Tyrone Crescioni]." *Weizmann Institute of Sci. v. Neschis*, 229 F. Supp. 2d 234, 251 (S.D.N.Y. 2002). In fact, the original complaint specifically mentions Tyrone Crescioni as a representative of FCB Commodities LLC. Complaint ¶ 16.

Accordingly, having found Tyrone Crescioni to be a required party, and finding that his joinder will not deprive the Court of subject-matter jurisdiction given that Ajmad is a foreign party and Tyrone Crescioni is American (and thus there appears to be diversity jurisdiction), the Court directs that Tyrone Crescioni be joined to this action under Rule 19(a)(1). Ajmad must effect service of the third amended complaint on Tyrone Crescioni within 90 days of the date of this memorandum order.

## III.    CONCLUSION

On the present record, the Court denies Ajmad's application for service via Instagram, LinkedIn, or email, but this denial is without prejudice to renewal. Ajmad may submit additional evidence regarding the email address fcbcommoditiesllc@gmail.com and/or the alleged Instagram and LinkedIn accounts of Dwight Crescioni by **August 5, 2024**. If Ajmad does not provide the necessary support as described in this memorandum order, the Court will then recommend

that this case be dismissed against all defendants under Rule 4(m) of the Federal Rules of Civil Procedure except FCB Commodities LLC, which has been served, and Tyrone Crescioni.

Ajmad's motion to add Tyrone Crescioni as a necessary party is granted and Ajmad is hereby given permission to file the third amended complaint. The Clerk is respectfully directed to close Docket No. 31 and mark it as "granted."

**SO ORDERED.**

Dated:  New York, New York
       July 22, 2024

_____
JAMES L. COTT
United States Magistrate Judge

14